UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON T. GATES,

               Plaintiff,

    v.

WILLIAM BECKER, et al.,

               Defendants.

Case No. C20-0611-JCC-MAT

REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiff Brandon Gates, proceeding pro se and *in forma pauperis* (IFP), filed a 42 U.S.C. § 1983 civil rights action relating to incidents occurring during his confinement as a pretrial detainee at Island County Correctional Facility (hereinafter "ICCF" or "jail"). (Dkt. 6.) Plaintiff names Lieutenant William Becker and Deputy Pamela McCarty as defendants, avers state and federal constitutional violations through interference with his legal mail and access to courts, and requests relief in the form of his removal from the jail and $50,000 in damages. He has since been convicted, *see Washington v. Gates*, No. 19-1-00125-15 (guilty plea entered July 28, 2020) (found at https://odysseyportal.courts.wa.gov/ODYPORTAL), and is currently incarcerated at Coyote Ridge Corrections Center.

REPORT AND RECOMMENDATION - 1

Defendants move for summary judgment and dismissal. (Dkt. 9.) Plaintiff opposes the motion. (Dkt. 16.)[1] The Court, for the reasons set forth below, concludes defendants' motion should be GRANTED and this matter DISMISSED with prejudice.

## BACKGROUND

Plaintiff alleges that, on February 9, 2020, he "attempted to send legal mail to the District Court concerning officers opening my legal mail," but never heard back from the court. (Dkt. 6 at 4.) He adds: "I know that [defendant McCarty] has brought me open legal mail, on two different occasions." (*Id*. at 4-5.) Plaintiff also alleges defendant Becker "told me that he would not give me a copy of my account [balance] so I can file my § 1983 in forma [pauperis]." (*Id*. at 7.)

Defendants provide further detail and documentation relating to plaintiff's allegations. ICCF records show three outgoing mailings from plaintiff on February 9, 2020, two directed to Division I of the Washington Court of Appeals in Seattle and one to the Temple of Justice in Olympia. (Dkt. 11, ¶3 and at 19 (Ex. A).) A report by McCarty addresses a February 12, 2020 incident in which she handed plaintiff an envelope from the Washington Court of Appeals that had arrived at the jail unsealed. (*Id*., ¶4 and Ex. B.) McCarty provides photographs of the envelope and attests it was apparent it had never been sealed. (*Id*., Ex. B and Dkt. 12, ¶3.) McCarty also denies ever opening plaintiff's legal mail outside of his presence, her involvement in any another incident in which plaintiff raised this accusation, or that plaintiff has been treated differently than any other inmate with regard to his mail or conditions of confinement. (Dkt. 12, ¶¶3-4.)

Plaintiff filed a grievance against McCarty on February 13, 2020. (Dkt. 11, ¶5 and Ex. C.) A response to the grievance states the envelope from the state court arrived unsealed and "shows no signs of ever being sealed." (*Id*., Ex. C.) The issue was deemed not grievable, as the jail had

---

[1] Plaintiff recently advised the Court of his desire to withdraw a prior request to voluntarily dismiss this matter and to continue with this litigation. (Dkt. 22.)

"no way to control how outside mail comes in." (*Id*.) Defendant Becker attests the jail's grievance log shows no record plaintiff appealed the facility response to the grievance. (*Id*., ¶6.)

Jail records also show that, on April 7, 2020, plaintiff submitted a request stating: "Need a print out of my trust account over past 6 months (need) 2x." (*Id*., Ex. E.) Becker attests he provided plaintiff a two-page account statement that same day, as reflected in a notation, "Given 4-7-20." (*Id.*, ¶ 7 and Ex. E.) In an April 29, 2020 grievance, plaintiff asserted denial of access to a court the day prior after Becker refused to provide him with a copy of his account balance. (*Id*., ¶8 and Ex. F.) In an attached post-it note, Becker wrote plaintiff had previously been given his account balance and was "not to be given more copies" as it was "not for his criminal case." (*Id*.) A May 1, 2020 facility response to the grievance states Becker met with and told plaintiff he would be charged fifteen cents a page for copies of his account balance. (*Id*.) Becker attests the jail's grievance log shows plaintiff did not appeal the facility response to this grievance. (*Id*., ¶8.)

## DISCUSSION

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

A.   Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. This burden can be satisfied by producing affirmative evidence negating an essential element of the nonmovant's case, or by establishing the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. The requirement is no "*genuine* issue of material fact" and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The party opposing summary judgment must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). A mere scintilla of evidence does not suffice to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party rely on allegations in the complaint or unsupported conjecture or conclusory statements.

1 *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

2 B.      Legal Mail

Plaintiff alleges the violation of his right to due process under the state and federal constitutions through a failure to send his legal mail to this Court on February 9, 2020, and two incidents of McCarty opening his legal mail outside of his presence. (Dkt. 6 at 4-5.) He also alleges a related equal protection claim, stating: "I need to have the same exact treatment as every other inmate in this facility, all legal mail need[s] to be open[ed] in front of this plaintiff just as every other inmates mail." (Dkt. 6 at 6.)

As defendants observe, "[s]ection 1983 does not vindicate state constitutional violations." *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1174 (W.D. Wash. 2015) (citations omitted). Nor does it "create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *See also Crumpton*, 947 F.2d at 1420. Plaintiff therefore cannot bring state constitutional claims under § 1983 and, for the reasons explained below, does not show a violation of his federal constitutional rights.

Prisoners and pretrial detainees have a First Amendment right to send and receive mail while detained, with reasonable limitations allowed for legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 84-89 (1987); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Courts, for example, consistently hold interests in maintaining safety and security to "justify the regulation of both incoming and outgoing prisoner mail." *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (citations omitted).

Legal mail to and from a pretrial detainee's attorney carries special protections under the First and Sixth Amendments, requiring a detainee be present when legal mail is inspected. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196-97 (9th Cir. 2017) (Sixth Amendment requires a

pretrial detainee be present when legal mail related to a criminal matter is inspected); *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence). However, "'[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail.'" *Hayes*, 849 F.3d at 1211 (quoting *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) ("All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files.")) Court mailings may, as such, be opened outside the presence of a prisoner or pretrial detainee. *Id*.

Plaintiff does not identify any conduct on the part of either named defendant in relation to an alleged failure to mail out a document to this Court on February 9, 2020. Contrary to his contention (*see* Dkt. 16 at 3-4), Becker cannot, as a supervisor, be held liable for actions of subordinates under a theory of vicarious liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Nor does plaintiff address evidence documenting his three outgoing mailings to state courts on the same date as the incident alleged. (Dkt. 11, ¶3 and at 19 (Ex. A).) His allegation of a failure to send out legal mail is unaccompanied by sufficient, plausible facts or the support of significant and probative evidence.

Plaintiff likewise fails to support a constitutional violation through the opening of his legal mail. Documentation associated with an incident involving McCarty shows an envelope arrived at the jail unsealed. (*Id*., ¶¶4-5 and Exs. B-C; Dkt. 12, ¶¶3-4.)[2] Even without that evidence, it remains that the mail at issue was sent by a court and was not "legal mail" required to be opened in plaintiff's presence. *See Hayes*, 849 F.3d at 1211. McCarty also denies involvement in any

---

[2] Plaintiff objects to the photographs, suggesting defendants could have altered any envelope and that only a video recording would provide for proper authentication. (Dkt. 16 at 2.) However, it should be noted that the photographs depicts an envelope addressed to plaintiff and marked mailed by the United States Postal Service on February 10, 2020. (Dkt. 11 at 26.)

REPORT AND RECOMMENDATION - 6

1  other mail-related incident and plaintiff does not set forth facts or evidence allowing for further
2  evaluation of such a claim.

3  Plaintiff, finally, does not support the existence of any other constitutional violation
4  associated with his mail. For instance, to state a § 1983 claim "for a violation of the Equal
5  Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted
6  with an intent or purpose to discriminate against the plaintiff based upon membership in a protected
7  class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citations omitted). Plaintiff
8  does not show either that he belongs to a protected class or that a defendant acted with intent to
9  discriminate against him based on his membership in that class. The claims of alleged
10 unconstitutional interference with legal mail are not supported, no more than conclusory, and
11 subject to dismissal. *Hernandez*, 343 F.3d at 1112.

12 C.     Access to Courts

13 Plaintiff alleges a constitutional violation in Becker's refusal to provide him with a copy
14 of his account balance so that he could file a § 1983 action IFP. (Dkt. 6 at 7.) He alleges this
15 denial of access to courts violated his right to due process and equal protection, and resulting harm
16 through the continuation of his unlawful custody, emotional distress, mental anguish, and
17 fluctuation of his blood sugar. (*Id*. at 7-8.)

18 Prisoners and pretrial detainees have a fundamental constitutional right of "meaningful"
19 access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817,
20 821 (1977). "While the Sixth Amendment, by its express language, protects those in criminal
21 proceedings, the Fourteenth Amendment protects all detainees against governmental interference
22 in their right of access to courts." *Hydrick v. Hunter*, 500 F.3d 978, 999-1000 (9th Cir. 2007)),
23 *vacated and remanded on other grounds by* 556 U.S. 1256 (2009).

REPORT AND RECOMMENDATION - 7

An access to courts claim may involve a right to affirmative assistance or the right to litigate without active interference. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). The right to assistance is limited to direct criminal appeals, habeas petitions, and civil rights actions, and extends only to the ability to bring a complaint, not a right to discover such claims or to litigate claims effectively once filed with the Court. *Lewis*, 518 U.S. at 354-55; *Silva*, 658 F.3d at 1102 & n.9. Inmates also have a right to pursue, without active interference, claims having a reasonable basis in law or fact. *Silva*, 658 F.3d at 1103-04. This right forbids the erection of barriers impeding the right of access to the courts and extends beyond the pleading stage, allowing inmates the right "to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." *Id*. (emphasis in original).

A prisoner or detainee alleging a violation of his right of access to courts is required to demonstrate he suffered an "actual injury." *Lewis*, 518 U.S. at 349-50. Actual injury entails, for example, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348 (citation and internal quotations omitted). *See also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (affirming dismissal of pretrial detainee's access to courts claim where detainee "did not allege injury, such as an inability to file a complaint or defend against a charge, stemming from the restrictions on his access to the law library").

Records from the jail show plaintiff requested copies of his trust account statement on April 7, 2020, that Becker provided plaintiff a copy of his two-page account statement that same day, and that Becker denied an April 28, 2020 request, but advised plaintiff could pay for additional copies at a cost of fifteen cents per page. (Dkt. 11, ¶¶7-8 and Exs. E & F.) Plaintiff appears to agree with this depiction of events, stating defendants did provide access to courts prior to the

1  filing of his April 29, 2020 grievance, but thereafter failed to provide the account balance needed
2  for other court filings. (Dkt. 16 at 3, 5-6.)

3  Plaintiff does not, however, show he was denied meaningful access to courts or suffered actual injury through the failure to provide him with one or more copies of a trust account statement. In fact, his allegations are belied by his filings in this Court. That is, in addition to an April 7, 2020 trust account statement plaintiff filed in *Gates v. Briones*, C20-536-RAJ (Dkt. 3) on April 13, 2020, he filed, on May 6, 2020, trust account statements dated April 30, 2020 in both this matter (Dkt. 4-2) and in *Gates v. Fundrella*, C20-612-JCC (Dkt. 5-2), and, on May 28, 2020, filed a trust account statement dated May 13, 2020 in both *Gates v. Briones*, C20-895-JCC (Dkt. 1-2), and *Gates v. Banks*, C20-896-JCC (Dkt. 1-4).

Plaintiff does not otherwise identify sufficient facts or provide significant and probative evidence supporting the access to courts claim. In addition, the alleged resulting continuation of his unlawful custody is refuted by review of the habeas corpus matter pursued in this Court, *see Gates v. Banks*, C20-896-JCC (Dkt. 12 (recommending dismissal because plaintiff had not yet been convicted or exhausted his state court remedies) and Dkts. 13 & 14 (adopting recommendation and dismissing case)), while the alleged emotional distress, mental anguish, and blood sugar effects are not the type of actual injuries giving rise to a constitutional claim of denial of access to courts, *see Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997). Plaintiff's access to courts claim is, in sum, properly dismissed on summary judgment.

D.    Exhaustion

Pursuant to the Prison Litigation Reform Act (PLRA): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

REPORT AND RECOMMENDATION - 9

available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion under the PLRA must be "proper", include compliance with a prison's grievance procedures, and is mandatory. *Jones v. Bock*, 549 U.S. 199, 211-12, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  The requirement to exhaust applies to both prisoners and pretrial detainees.  *See Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Panaro v. City of North Las Vegas*, 432 F.3d 949, 950, 952 (9th Cir. 2005)

The ICCF grievance procedure authorizes a written appeal by an inmate not satisfied with the disposition of a grievance by a supervisor, to be decided by a Shift Lieutenant, and a second appeal to the Jail Administrator if the inmate still objects to the grievance disposition. (Dkt. 11, ¶6 and Ex. D at 29.)  ICCF maintains a grievance log documenting all grievances, appeals, and dispositions. (*Id*.)  Defendant Becker attests the jail's grievance log shows no record plaintiff appealed the facility response to the legal mail or account balance grievances.  (*Id*., ¶¶6, 8.) Plaintiff has, moreover, twice conceded his failure to exhaust his administrative remedies (Dkt. 15 & Dkt. 16 at 4), while also stating he "is being denied the [exhaustion] of grievance process" and that exhaustion is "impossible" where "the appeal of a grievance is never answered purposely" by defendants (Dkt. 16 at 6-7).

Defendants establish plaintiff's failure to exhaust and plaintiff does not show his inability to exhaust due to some impediment making remedies for exhaustion effectively unavailable.  A failure to exhaust generally results in dismissal without prejudice.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  However, because plaintiff's claims lack merit, they should be dismissed with prejudice.[3]

CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. 9) should be GRANTED and plaintiff's

---

[3] Defendants also assert their entitlement to qualified immunity.  Finding plaintiff's claims subject to dismissal for the reasons stated herein, the Court declines to address qualified immunity.

REPORT AND RECOMMENDATION - 10

claims and this matter DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 15, 2021**.

Dated this 18th day of December, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11